IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Alvon Terrance Bennett,<br>　　Petitioner, | )<br>)<br>) |
| v. | )　No. 1:24-cv-1253 (LMB/WBP)<br>) |
| Chadwick Dotson,<br>　　Respondent. | )<br>)<br>) |

## MEMORANDUM OPINION

Alvon Terrance Bennett ("petitioner" or "Bennett"), a Virginia inmate proceeding pro se, has filed an Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging the constitutionality of the decision by the Circuit Court of Chesterfield County, Virginia to impose a four-year sentence that had been suspended after Bennett violated his conditions of supervision and reoffended. The respondent has filed a Rule 5 Answer and Motion to Dismiss ("Motion"). Bennett has filed a response to the Motion, which is ripe for disposition. For the reasons that follow, respondent's Motion will be granted and Bennett's Petition will be dismissed with prejudice.

On January 18, 2018, in the Circuit Court of Chesterfield County, Bennett pleaded guilty to grand larceny in violation of Virginia Code § 18.2-95 and was sentenced on January 29, 2018, to five years in prison, with four years and eight months suspended. Bennett did not appeal either his conviction or sentence. Between August 27, 2018, and January 11, 2022, Bennett returned to the sentencing court for multiple violations of the conditions imposed as part of his suspended sentence. For example, on August 27, 2018, the circuit court revoked Bennett's suspended sentence and resuspended all but 30 days. On February 20, 2020, the circuit court revoked Bennett's suspended sentence and resuspended four years and four months. In each of these first proceedings, Bennett admitted that he had violated his conditions of supervision but

offered various excuses. On December 17, 2021, at Bennett's third show cause hearing, the trial judge asked if there were "any legal or factual reasons why the court should not find [Bennett] in violation of the terms of his suspended sentence." Hab. at 273.[1] Bennett's counsel at that time, Mark E. Englisby, responded, "No, sir," and Bennett did not contest the violation, but his counsel argued for leniency, asked the court to resuspend Bennett's sentence, and requested that "any suspended sentence [be] on the condition that [Bennett] enter into and successfully complete the WAR Program." Id. at 276. The court agreed and stayed execution of Bennett's sentence to allow him to enter and complete the program but warned Bennett that any failure on his part would result in him "go[ing] to the penitentiary." Id. at 280. On January 11, 2022, judgment was entered resuspending four months of his original sentence and staying execution of the remaining four years. [Dkt. No. 19-2] at 1.

Less than two months later, on February 10, 2022, Bennett's probation officer filed a revocation report stating that she contacted Bennett on January 31, 2022, and again on February 2, 2022, and instructed him to report to the WAR Foundation. On February 7, 2022, Bennett's probation officer contacted the WAR Foundation and learned that Bennett had not reported and that the WAR Foundation was "not accepting participants at th[at] moment." Hab. at 131.

---

[1] The record of the habeas proceeding in the Supreme Court of Virginia includes a copy of the trial court record from January 7, 2021, through July 5, 2023, including transcripts of the December 17, 2021 and September 27, 2022 revocation proceedings. References to that record are designated "Hab. at __." The third revocation major violation report, dated December 28, 2020, indicated that Bennett had tested positive for marijuana and cocaine on October 27, 2020, and November 25, 2020; and he had failed to report to his probation officer on August 3, 2020, October 15, 2020, October 16, 2020, October 22, 2020, and December 11, 2020. Hab. at 83. On August 9, 2021, Bennett's probation officer filed an addendum to the report stating that, after his release from custody on July 9, 2021, Bennett absconded from supervision. Id. at 100. The records establish that Bennett had overlapping court proceedings, as well as being convicted and sentenced for new offenses in both Henrico and Chesterfield Counties.

On May 1, 2022, Bennett was arrested by Henrico County Police for identity theft, possession of Schedule I or II drugs, trespassing, and petit larceny from a person. Id. at 158. Bennett's probation officer added this arrest to the February 10, 2022 revocation report. Bennett's fourth show cause hearing, held on September 27, 2022, addressed the violations in the February 10, 2022 revocation report and May 20, 2022 addendum. The trial judge asked if there were "any legal or factual reasons why the court should not find [Bennett] in violation of the terms of his suspended sentence." Id. at 286. Bennett's counsel, Jamison M. Kinnane,[2] responded, "No, your Honor," and Bennett confirmed that he had discussed the violations with his counsel. Id. The court found Bennett in violation of the conditions of his suspended sentence. Id. at 287.

In mitigation, Kinnane introduced a letter stating that Bennett was involved in the RISE program at the Henrico Jail and had advanced to a mentoring role in the program. She also introduced a letter from Bennett's daughter expressing her support for Bennett but stating that she could not appear in person because she was in college in South Carolina. Id. at 288–89. Kinnane acknowledged the violations and addressed Bennett's failure to complete the WAR Foundation program, explaining that Bennett believed his release date from Henrico County Jail was January 25, 2022, and that he "had secured a position at the War Foundation;" however, he was not released until January 27, 2022, and when he contacted the WAR Foundation that evening, he was told that his "anticipated bed" had been transferred to someone else and a bed was not "available." Id. at 290-91. Bennett contacted his attorney for the Henrico County

---

[2] Attorney Brett P. Blobaum had originally been appointed to represent Bennett on May 6, 2022, Hab. at 156, and at some time between then and September 2, 2022, Kinnane was appointed to replace Blobaum. Id. at 162.

charges, Kevin Calhoun, who told him "to continue trying to contact the WAR Foundation in order to receive a bed." Id.

Kinnane admitted that Bennett had not followed through with the court's order to report to the WAR Foundation but argued that Bennett had made "attempts to do so" but, because of the timing of his release, he ended up homeless, "living on the streets," and "relapsed." Id. at 292. Kinnane also explained that Bennett had recently lost his wife and two other family members in March 2022, and that although he had struggled with mental health and addiction issues for 30 years, he had been taking steps "to put himself in a better situation for when he is eventually released from incarceration," specifically by participating in the RISE program. Id. at 293. Kinnane also informed the court that Bennett had a tumor on his leg. Id. at 294.

In Bennett's address to the court, he admitted his addiction issues and drug-related health problems and recounted much of what his attorney had said, adding more details about his late family members and his physical health. Id. at 297–302. The court stopped Bennett during his allocution, stating that Bennett was repeating "word for word" what he had argued to the court during the December 2021 revocation hearing and reminded him that he had been warned about the consequence of further violations of his suspended sentence. Id. at 302–03. Bennett acknowledged that he had been warned and declined a further opportunity to address the court. Id. at 303, 304. On October 11, 2022, the court lifted the stay and sentenced Bennett to four years' incarceration with four months suspended. Id. at 169–70, 304. Bennett did not appeal that decision but wrote several letters to the trial judge in November and December 2022 about his family members who had passed, his wish to see his daughters, and his addiction and medical problems.

In his December 7, 2022 letter, Bennett wrote that the trial judge "was right" to impose the "4 years" and that Bennett should have returned to jail when the WAR Foundation did not have a bed for him. Id. at 198. Bennett's December 8, 2022 letter shifted the blame to the Henrico County Sheriff for releasing him before the WAR Foundation could transport him to its facility. Id. at 203, 205. Bennett's December 16, 2022 letter alleged that Kinnane should have asked the court to run his time concurrent with the "28 months" for his Henrico County court convictions and argued that Bennett had violated the conditions of his suspended sentence because of his "addiction." Id. at 211–12.[3]

On January 5, 2023, Bennett filed the first of several motions to modify his sentence again blaming either Henrico County Jail personnel for not transporting him to the WAR Foundation and the WAR Foundation for not sending someone to pick him up when he was released on January 27, 2022. Id. at 219–20. On January 13, 2023, the circuit court denied his motion. Id. at 228. Bennett did not appeal.

Bennett's next motion to modify his sentence, filed on January 29, 2023, accused the trial judge of not having any sympathy and again referenced Bennett's addiction, his mental health issues, the recent passing of his family members, and the Sheriff's failure to hold him until someone could transport him to the WAR Foundation. Id. at 230. Bennett also accused the trial judge of racial bias and called him "an evil man" because Bennett would still have "4 months" of

---

[3] At the September 27, 2022 hearing, Kinnane informed the court that Bennett had "a fairly significant sentence he [was] serving in Henrico for misdemeanor convictions" and requested that the court "consider running any time concurrent with that time." She also discussed Bennett's addiction struggles, health issues, and recent family losses, and explained that Bennett was working to address his addiction by participating in the RISE program and applying for the Real Life program. Id. at 293–96.

his original sentence suspended upon commencing probation. Id. at 231, 232. The court denied his motion on February 3, 2023, id. at 237, and Bennett did not appeal.

On August 2, 2023, Bennett asked the court to reduce his four-year sentence or run it concurrent with the "28 months sentence he received on August 25, 2022 in the Henrico General District Court." 8/7/23 Motion at 1, 8.[4] Bennett again blamed the Henrico County Jail for not transporting him to the WAR Foundation, id. at 2, requested leniency based on his health and family issues, and stated his desire to "be a part of the community." Id. at 6. On August 8, 2023, the circuit court denied the motion, finding "no good cause to grant [Bennett]'s request." Bennett did not appeal.

On March 10, 2023, Bennett, proceeding pro se, filed a habeas petition in the Supreme Court of Virginia, Bennett v. Dotson, Record No. 230179, which raised the following claim for ineffective assistance of counsel:

> Counsel was ineffective at the September 2022 revocation proceeding for "fail[ing] to inform the court that petitioner suffer[ed] from an unspecified, diagnosed mental health condition for which he has been prescribed medication and receive[d] Supplemental Security Income from the federal government;" and not calling an unnamed witness from the WAR Foundation—the foundation in charge of the substance abuse treatment program petitioner was ordered to complete—to testify at the revocation hearing."

Hab. at 338. The Virginia Supreme Court denied the petition on May 8, 2024, finding that Bennett had "no constitutional right to counsel or concomitant right to the effective assistance of counsel at a revocation hearing where, as here, the record, including the transcript of the revocation proceeding, demonstrated that petitioner conceded violating the terms of his

---

[4] This motion is not part of the habeas record because it was filed approximately five months after the habeas was filed. The state court clerk certified the motion and other matters filed or entered while the state habeas was pending. These records are in chronological order but are not sequentially numbered. The records were filed in federal court on January 21, 2025.

suspended sentence and offered no substantial mitigating circumstances or complex reasons why revocation was inappropriate." Hab. at 337–38 (citing Gagnon v. Scarpelli, 411 U.S. 778, 790-91 (1973); Walker v. Forbes, 292 Va. 417, 422-25 (2016)). In the alternative, the Virginia Supreme Court held that Bennett's "claim satisfie[d] neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984)." Hab. at 339 (footnote omitted).

On July 8, 2024, Bennett, proceeding pro se, filed the instant Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. The Court granted him leave to file an amended petition. The Amended Petition alleges three claims of ineffective assistance from his counsel during the revocation proceedings. Specifically, he cites counsel's failure to (1) subpoena his probation officer to find out why "Ms. Hamm didn't lock [him] up on January 31, 2022;" (2) contact Ms. Amber or Mrs. Kathy Gates of the WAR Foundation "to find out did they stop taking Participants before or after [Bennett's] release from Henrico County Jail;" and (3) bring his "mental state to the court's attention."[5]

A federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court. Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). "To [exhaust his claims], the petitioner must have presented to the state court 'both the operative facts and the controlling legal principles,'" Kasi v. Angelone, 300 F.3d 487, 501–02 (4th Cir. 2002) (citation omitted), giving the state court "a meaningful opportunity to consider allegations of legal error." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). A claim has not been "fair[ly] present[ed]" for exhaustion

---

[5] A district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard" and considering "only the specific claims raised in a § 2254 petition." See Folkes v. Nelsen, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted).

7

purposes if the claim is raised in "a procedural context in which its merits will not be considered." Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Virginia Supreme Court. See, e.g., Duncan v. Henry, 513 U.S. 364, 365–66 (1995); see Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (federal habeas review is limited "to the record that was before the state court that adjudicated the claim on the merits") (citing 28 U.S.C. § 2254(d)(1)). The petitioner bears the burden of proving exhaustion. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). An unexhausted claim may nevertheless "be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Such claims are deemed to be simultaneously exhausted and defaulted. Id.

"[A] procedural default occurs when the petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Burket v. Angelone, 208 F.3d 172, 183 (4th Cir. 2000) (quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1, (1991)). "Since the procedural bar that gives rise to exhaustion is an independent and adequate state ground . . . [the] claims raised . . . must be treated as simultaneously exhausted and procedurally barred from federal habeas review." Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (citing Baker, 220 F.3d at 288).

Respondent argues that Claim 1, alleging that counsel was ineffective for not subpoenaing Bennett's probation officer, was not raised in the state court habeas proceedings, rendering it exhausted and defaulted because it would now be untimely under the Virginia statute

8

of limitations, Virginia Code § 8.01-654(A)(2), and barred as successive under Virginia Code § 8.01-654(B)(2). In response, Bennett asserts that he exhausted Claim 1 because he raised it in his multiple motions to modify his sentence. Even assuming that a claim of ineffective assistance of counsel could be raised in such motions, Bennett does not dispute that he failed to appeal the district court's denials of each of his motions to modify, which is necessary to satisfy the exhaustion requirement. See Duncan, 513 U.S. at 365–66; Castile, 489 U.S. at 351. Bennett's failure to appeal constitutes a default that forfeits federal habeas review. See Wise v. Williams, 982 F.2d 142, 146 (4th Cir. 1992) (affirming finding that claim was procedurally defaulted because petitioner failed to timely file his notice of appeal in state court).

A federal court may review a defaulted claim if the petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2005). Bennett does not assert cause and the record does not show cause to excuse his default.

Although Bennett does not mention the "narrow exception" recognized in Martinez v. Ryan, 566 U.S. 1 (2012), which permits review of a defaulted claim of ineffective assistance of trial counsel, Claim 1 does not satisfy Martinez because his claim is not "a substantial one." Fowler v. Joyner, 753 F.3d 446, 461 (4th Cir. 2014) (internal citations and quotations omitted). Whether a claim is "substantial" is governed by Strickland v. Washington, 466 U.S. 668 (1984), and a petitioner bears the burden of showing that his counsel's performance was deficient and that as a result, he suffered prejudice. Fowler, 753 F.3d at 459, 462-63. More recently, the Fourth Circuit has clarified that to establish a substantial claim a petitioner "must demonstrate that [his] underlying ineffective assistance of counsel claim is substantial with reference to Strickland's two familiar prongs." Sigmon v. Stirling, 956 F.3d 183, 199 (4th Cir. 2020).

9

Bennett's Claim 1, which alleges ineffective assistance of counsel for not subpoenaing his probation officer, is not "substantial" because he admitted that he failed to enroll in or complete the WAR Foundation program and that he had new convictions in Henrico County. Moreover, Bennett's counsel proffered much of what Bennett claims his probation officer could have offered to the court during the December 2021 hearing. Given that the court had previously warned Bennett that additional violations would result in his incarceration, the best his counsel could do was to request that any time imposed be concurrent with the time imposed by the Henrico County court. That was a reasonable argument under the circumstances and establishes that counsel's performance satisfied the Strickland test.

Bennett also fails to establish that he was prejudiced by counsel's performance because counsel was in the unenviable position of representing Bennett in his fourth revocation hearing before a judge who had warned him that he would be incarcerated for further violations. Given that there is no credible argument that the outcome would have been different had counsel subpoenaed Bennett's probation officer, Claim 1 is not a substantial claim under either prong of Strickland and is, therefore, defaulted.

Bennett's remaining claims of ineffective assistance of counsel are reviewed under the highly deferential standard set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides that "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009) (quoting AEDPA). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772–73 (2010). This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt," Renico, 559 U.S. at 773 (internal quotations and citations omitted), regarding both their legal conclusions and factual findings, Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008). Section 2254(d)(1), as amended by AEDPA, provides for a "backward-looking . . . examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time—i.e., the record before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011).

Both Claims 2 and 3 allege that counsel was ineffective for not calling two unnamed witnesses to testify at Bennett's revocation hearing and not raising Bennett's unspecified mental health condition. The state habeas court found that these claims did not meet either the performance or prejudice prong of the Strickland test because Bennett had not sufficiently proffered facts to support these claims in his petition. Although Bennett attempted to cure the deficiencies in his response to the motion to dismiss by alleging additional facts, he never sought leave to amend his petition. Accordingly, the state habeas court refused to consider such newly alleged facts. Hab. at 339, n.2 (a "new factual allegation, made for the first time in reply to the motion to dismiss, is not properly before the Court") (citing Va. Code § 8.01–654(B)(2) (a

11

petition for a writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing")); Va. R. Sup. Ct. 1:8 ("No amendments may be made to any pleading after it is filed save by leave of court."); Va. R. Sup. Ct. Rule 5:7(e) (a petitioner may not raise new claims unless, prior to the expiration of the statute of limitations and the entry of a ruling on the petition, he obtains permission from the court to do so). Because the state court's ruling is neither an unreasonable application of federal law nor an unreasonable determination of facts, Claims 2 and 3 will be dismissed.[6]

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 17] will be granted, and the Amended Petition will be dismissed by an Order to be issued with this opinion.[7]

Entered this 24th day of September, 2025.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge

---

[6] Even without AEDPA deference, the record does not show that Bennett has satisfied either the performance or prejudice prong of Strickland.

[7] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.